UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KEY CUSTOM HOMES, INC.,

        Plaintiff,

-vs-                                     Case No.  5:05-cv-266-Oc-10GRJ

MID-CONTINENT CASUALTY COMPANY,

        Defendant.
_____/

## O R D E R

This is an action for declaratory judgment concerning the rights and obligations of the parties under a written contract - a policy of insurance.  The case began in state court, but was removed to this Court on the basis of diversity of citizenship.  It is presently before the Court on the Parties' cross-motions for summary judgment (Docs. 19, 35, 44), to which each side has filed a response in opposition (Docs. 26, 40, 46).[1]

The central issue is whether the losses suffered by the Plaintiff resulting from a fire that completely destroyed a construction project are covered by the Defendant's Commercial General Liability Policy.  The Court finds that Florida law dictates the conclusion that the Plaintiff's claims for coverage under the insurance policy are without merit, and the Defendant's motion for summary judgment is due to be granted.

---

[1]The Court is aware that the Defendant has filed a prior motion for judgment on the pleadings (Doc. 21).  The factual and legal arguments contained in that motion are repeated almost verbatim in the Defendant's motion for summary judgment, therefore the motion for judgment on the pleadings shall be deemed moot, and will not be considered by the Court.

**Factual Background**

The Plaintiff, Key Custom Homes, Inc. ("Key Custom") is a Florida corporation and was the general contractor and builder for a home construction project located in Groveland, Florida ("the Groveland Project"), on land owned by the Hunt Family II, Ltd., a Florida limited partnership ("Hunt Family").  The Defendant, Mid-Continent Casualty Company ("Mid-Continent") is a foreign insurance company authorized to do business in Florida that issued a Commercial General Liability Insurance Policy, number 04GL00519464 (the "CGL Policy") to Key Custom on May 7, 2003.[2]  The CGL Policy was in full force and effect at all relevant times.  Key Custom also obtained builder's risk insurance for the Groveland Project from Zurich North America.[3]

I.      The Groveland Project

The Hunt Family maintained a secure gate that controlled and restricted access to the Groveland Project between the hours of 6:00 a.m. and 5:00 p.m.  During normal working hours, (between 8:00 a.m. and 5:00 p.m.) care, custody and control over the Groveland Project was shared by Key Custom and the Hunt Family.  After normal working hours, the property was under the exclusive care, custody and control of the Hunt Family.  The Hunt Family did not pay Key Custom during the construction period.  Instead, both entities had agreed that Key Custom would receive a share of the profits once the house

---

[2] A copy of the CGL Policy is attached as Exhibit A to Key Custom's Amended Complaint (Doc. 42).

[3] A Builders Risk policy protects against damage to property during construction.

was sold to a third party and all expenses paid.  In addition, Key Custom obtained at least one construction loan from the Hunt Family to pay various expenses associated with construction at the Groveland Project.

The Groveland Project was moving forward towards completion, and Key Custom anticipated that Lake County would issue a certificate of occupancy by mid-March 2004. However, on February 19, 2004 an accidental fire broke out at approximately 9:50 p.m., resulting in a total loss of the Groveland Project.  At the time of the fire, the Project was worth in excess of $1.6 million.  The Hunt Family has filed a lawsuit in the Circuit Court in and for Lake County, Florida, Case No.  2006-CA-356, against Key Custom and its corporate officers, alleging breach of contract and seeking to recover money advanced to Key Custom to pay expenses for the Groveland Project.[4]  Multiple claims have also been made against Key Custom by subcontractors and other third parties involved in the construction of the Groveland Project, seeking recovery of sums due for labor and material. Am.  Complt.  ¶ 17(a).[5]  It is unclear whether these other claims have yet resulted in lawsuits.

---

[4]The contract the Hunt Family alleges was breached is a November 17, 2004 written agreement whereby Key Custom agreed to repay to the Hunt Family more than $100,000 which the Hunt Family advanced to Key Custom to pay various obligations incurred by Key Custom in connection with the development and construction of the Groveland Property. Apparently, various subcontractors and vendors placed liens against the property following the fire, and the Hunt Family sought repayment from Key Custom pursuant to their agreement and to clear the title to the land. See Exhibit A to Mid-Continent's Motion for Summary Judgment (Doc.  44).

[5]See also Excerpts from Mid-Continent's Claim File (Doc. 50).

3

Key Custom made a timely claim under its builder's risk policy. The builder's risk policy paid Key Custom up to the policy limits, approximately $820,000. However, the policy did not defray all the costs incurred by Key Custom from the loss of the Groveland Project. Key Custom then made a timely claim under its policy with Defendant Mid-Continent, seeking coverage "for the claims of the subject property's owner and various third-parties, including but not limited to, subcontractors, arising from the destruction of the [Groveland Project]."[6] Key Custom is not seeking coverage to repair the destroyed home,[7] nor does it appear that Key Custom is seeking to enforce the indemnification provisions or "duty to defend" provisions of the CGL Policy. Id. Rather, Key Custom seeks monetary compensation in the amount of approximately $1,000,000.

II.   The CGL Policy

The CGL Policy covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Section I, § 1.a.

"Property Damage" is defined in relevant part as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be

---

[6] Amended Complaint, ¶ 17(b).

[7] Repair would not be possible as the Hunt Family has sold the property and Key Custom is no longer involved in any capacity with the further development or construction of the Groveland Project.

deemed to occur at the time of the physical injury that caused it." See CGL Policy, Section V, § 17(a).

The CGL Policy does not cover "bodily injury" or "property damage" for which "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," nor does it cover "property damage" that is caused by or arises from work performed by the insured, by or any of the insured's contractors or subcontractors. Section I, A, §2.b., § 2.j.

The CGL Policy does cover "insured contracts," which include leasing agreements, licensing agreements, and "that part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Section V, § 9 (emphasis added). "Tort liability" is defined as "a liability that would be imposed by law in the absence of any contract or agreement." Id., § 9.f.

The CGL Policy is considered "excess insurance" over and above any fire, extended coverage, or builder's risk insurance policies. In other words, Key Custom was required to seek compensation from its other policies before seeking compensation from Mid-Continent. Section IV, §4.b.(1)(a).

III. The Denial of Coverage

On August 30, 2004, Mid-Continent, while conceding that the fire was accidental, tendered a reservation of rights letter to Key Custom based upon Mid-Continent's interpretation of various policy provisions. For example, Mid-Continent stated that the

damages Key Custom claimed under the CGL Policy related to the housing structure, and under Florida's Economic Loss Rule, damage to a structure under construction is only recoverable under contract law.  The claim, therefore, did not fall within the Policy's coverage.  Mid-Continent also contended that under Florida law, a constructed home is considered the product of the builder, and therefore may be excluded from coverage.[8]

Mid-Continent formally denied coverage on April 18, 2005.  As grounds for the denial Mid-Continent asserted that:

> the claims being made against Key Custom Homes, Inc. are by subcontractors and/or suppliers for amounts not paid them for their work done for Key Custom Homes, Inc. and would be considered economic in nature.  More precisely, they are breach of contract claims that arise out of contracts between Key Custom Homes, Inc. and the claimant parties.  Likewise, the claims presented by the Hunt Family Limited Partnership for liens filed against the land are economic claims arising out of a contract between Key Custom Homes, Inc. and the Hunt Family Limited Partnership.
>
> Economic damages do not meet the definition of property damages or bodily injury defined by the policy.[9]

Mid-Continent also denied coverage based on several of the CGL Policy's Exclusions:

> All of the damages claimed by the Hunt Family Limited partnerships and/or your subcontractors are for property damage to your ongoing work.  Under Florida law, damage to your work

---

[8] Section 2(k) excludes damage to the insured's product.

[9] A copy of the denial letter is attached as Exhibit C to Key Custom's Amended Complaint (Doc. 42).

>>is the insured's business risk and is not covered damage. Further, such damage is specifically excluded by one or more of the exclusions cited in this letter, including exclusions 2.b., j.(1), (5), (6) and k.[10]

Key Custom then initiated this action by filing a declaratory judgment action in state court on May 6, 2005 (Doc. 2). Following removal to this Court, the Magistrate Judge permitted Key Custom to amend its complaint on May 11, 2006 (Doc. 41). The Amended Complaint (Doc. 42) seeks a declaration from the Court: (1) that the CGL Policy provides coverage for Key Custom's claimed losses; and (2) that the provision in "Section II - Who Is An Insured, 2 (2)(b)" of the CGL Policy, which describes when volunteers and employees are covered, is vague and ambiguous, and therefore must be interpreted in favor of Key Custom to provide coverage for its claimed losses. Key Custom also seeks attorneys' fees and costs. Mid-Continent answered the Amended Complaint (Doc. 43) on May 22, 2006, asserting several affirmative defenses. Prior to amending its complaint, Key Custom moved for summary judgment in its favor on both claims for declaratory relief. Mid-Continent has also moved for summary judgment in its favor on both claims.

---

[10]Section 2.b. excludes from coverage "bodily injury" or "property damage" that the insured is obligated to pay by reason of assumption of liability in a contract or agreement. Section 2.j.(1) excludes from coverage "property damage" to property the insured owns, rents, or occupies, including any costs or expenses to repair, replace, enhance, restore, or maintain such property for any reason. Section 2.j.(5) excludes from coverage "property damage" to real property on which the insured, or any contractors or subcontractors working on behalf of insured, perform any operations, if the "property damage" arises out of the operations. Section 2.j.(6) excludes from coverage real property that the insured must restore, repair or replace because the insured's work on the real property was incorrectly performed. Section 2.k. excludes from coverage any "property damage" to the insured's own "product."

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celetex, 477 U.S. at 324.

## Discussion

Mid-Continent's duty to cover Key Custom's losses rests entirely upon the meaning of the provisions of the CGL Policy and their legal effect.  Since the construction and effect of a written contract are matters of law to be determined by the Court, this matter, given the

8

completeness of the record, is appropriate for summary judgment. See Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1357-58 (M.D.Fla.2001) ("Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.") (citing Talat Enter., Inc. v. Aetna Life & Cas., 952 F.Supp. 773 (M.D.Fla.1996)).

Because the jurisdiction of this Court is based on diversity of citizenship, and since the CGL Policy was issued in Florida, the Court must look to the substantive law of Florida for guidance in interpreting the Policy. Klaxson Co. v. Stentor Elec. Mgf. Co., 313 U.S. 487 (1941); Lazzara Oil Co. v. Columbia Cas. Co., 683 F. Supp. 777, 779 (M.D. Fla. 1988). In Florida, the construction of ambiguities in an insurance policy is a question of law. State Farm Fire & Cas. Co. v. Metro. Dade County, 639 So.2d 63, 65 (Fla. 3d Dist. Ct. App. 1994) (citing Jones v. Utica Mut. Ins. Co., 463 So.2d 1153, 1157 (Fla. 1985)). "[P]olicy provisions which tend to limit liability must be construed liberally in favor of the insured against the insurer," however, "where the language of the policy is clear and unambiguous on its face, the policy must be given full effect." Id. (citations omitted). "In the absence of ambiguity . . . it is the function of the court to give full effect to the insurance contract as written." Id. (citing United States Fire Ins. Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d Dist. Ct. App. 1976)). On the other hand, where a policy is ambiguous, a court will construe the policy in favor of coverage and against the insurer who drafted the policy. Northland Cas. Co., 160 F.Supp.2d at 1358. When assessing an insurance dispute, the insured has the

burden of proving that a claim against it is covered by the policy, and the insurer has the burden of proving an exclusion to coverage. Id. (citations and quotations omitted).

The Parties have raised several arguments for and against coverage, which distill to two main issues:

> (1) whether the losses for which Key Custom seeks coverage are purely economic damages, not covered by the CGL Policy, or whether the claimed losses are "property damage" as defined in the CGL Policy, and therefore covered; and
>
> (2) if Key Custom's claims are covered, do any of the exclusions listed by Mid-Continent in its denial letter apply to deny coverage.

I.  Are Key Custom's Alleged Losses Covered By the Policy?

The Parties agree that the CGL Policy is a general liability policy, which protects the insured from losses or damages arising from the insured's liability to a third party. See Southeast Farms, Inc. v. Auto-Owners Ins. Co., 714 So.2d 509, 512, n. 4 (Fla. 5th Dist. Ct. App. 1998); American Cas. Co. of Reading, Pa. v. Bloch, 176 So.2d 579 (Fla. 3d Dist. Ct. App. 1965). General liability insurance "is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss." Harris Speciality Chemicals, Inc. v. U.S. Fire Ins. Co., Case No. 3:98-CV-351-J-20B, 2000 WL 34533982, * 6 (M.D. Fla. Jul. 7, 2000). There is also no dispute that in order to be covered by the CGL Policy, Key Custom must be seeking damages because of "bodily injury" or "property damage."

"Property Damage" is defined in relevant part as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be

deemed to occur at the time of the physical injury that caused it." See CGL Policy, Section V, § 17(a). It includes damages flowing from an "insured contract," which is defined, in relevant part, as "that part of any other contract or agreement pertaining to your business . . . under which you assume the <u>tort liability</u> of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Section V, § 9 (emphasis added). "Tort liability" is defined as "a liability that would be imposed by law <u>in the absence of any contract or agreement</u>." Id., § 9.f. (emphasis added). The definition of "property damage" expressly excludes situations where "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Id., Section I, A, §2.b.

In its motion for summary judgment, Mid-Continent argues that the damages for which Key Custom seeks coverage are purely economic damages that are not covered by the CGL Policy. Mid-Continent focuses on the fact that Key Custom is admittedly seeking coverage to satisfy various breach of contract claims made by the Hunt Family, subcontractors, vendors, and others. Key Custom is not seeking coverage to repair the destroyed home, nor is it seeking to be indemnified for any tort claim made against it or any other entity for whom it might be responsible under tort or contract law. Rather, Key Custom is seeking coverage for money that it owes to the Hunt Family and other third parties as contractual obligations, and Key Custom intends to use the insurance proceeds to pay those obligations.

Under the law of Florida, general liability policies such as Mid-Continent's CGL Policy here, clearly do not cover damages that are purely economic in nature. See Home Owners

Warranty Corp. v. Hanover Ins. Co., 683 So.2d 527, 529 (Fla. 3d Dist. Ct. App. 1996); Old Republic Ins. Co. v. West Flagler Assocs., Ltd., 419 So.2d 1174, 1177-78 (Fla. 3d Dist. Ct. App. 1982). See also Harris Speciality Chemicals, 2000 WL 34533982, at * 6; Lazzara Oil Co., 683 F. Supp. at 780-81. It is equally clear that breach of contract claims for the recovery of money are not covered by general liability insurance policies. See West Orange Lumber Co., Inc. v. Indiana Lumbermens Mutual Ins. Co., 898 So.2d 1147, 1148 (Fla. 5th Dist. Ct. App. 2005); Waste Corp. of America, Inc. v. Genesis Ins. Co., 382 F. Supp. 2d 1349, 1354-55 (S.D. Fla. 2005); American States Ins. Co. v. Pioneer Elec. Co., 85 F. Supp. 2d 1337,1343 (S.D. Fla. 2000). See also Harris Speciality Chemicals, 2000 WL 34533982 at * 5 (noting that coverage under a general liability policy only "extends to tort damage caused by an insured's work or product.").

Key Custom does not dispute this clearly established law. Instead, it argues, without any legal support,[11] that its claims arise from "tangible property damage" - *i.e.* the loss of the Groveland Project. Alternatively, Key Custom argues that the claims against it are so inextricably intertwined with the loss of the Groveland Project, that they should be deemed claims for "property damage" and covered. In short, Key Custom contends that "[t]he fact that Key Custom may choose to pay subcontractors who are owed for the construction of that structure, if held to be an economic loss, should be construed to be within the scope

---

[11] Not only has Key Custom failed to present a single case where a claim based on the destruction of property by fire was covered by a CGL Policy, the Court has been unable to uncover any such decisions as well.

of coverage because such economic damage is merely incidental to the underlying claims arising from the accidental fire, . . . and therefore falls within the scope of coverage."[12] The Court disagrees.

Although the various claims against Key Custom may be traced, from Key Custom's point of view, to the property damage to the Groveland Project caused by fire, they are separate and independent claims which have their basis in either statute (the construction liens on the Hunt Family property) or common law (the breach of contract claims). In short, Key Custom's argument simply overlooks the fact that the claims against it would exist regardless of the loss of the property by fire. They do not have their basis in either tort law or seek recovery for damage to any tangible property. For example, the Hunt Family's state court complaint alleges a sole claim for breach of a written agreement with Key Customs, and simply seeks recovery of the money it advanced to Key Custom - in other words, economic damages. The Hunt Family does not allege any tort-based claims, nor does it seek recovery for the destruction or loss of use of any tangible property.

Mid-Continent has submitted copies of the invoices and promissory notes between Key Custom and its subcontractors and vendors, as well as copies of the construction liens on the Hunt Family property, for which Key Custom seeks recovery under the CGL Policy.[13] These documents clearly demonstrate that the present and/or future claims against Key

---

[12] See Doc. 19, p. 4 (emphasis in original omitted).

[13] See Doc. 50.

Custom will be to recover the money owed to these entities in exchange for their goods and/or services rendered on the Groveland Project.[14] Significantly, Key Custom would have been obligated to make these payments to the Hunt Family, subcontractors, vendors and other third parties, even if the Groveland Project had not been destroyed, but had simply sold for less than all of the incurred expenses. Thus it is clear that Key Custom's obligations did not arise from the damage to the Groveland Project, but rather from Key Custom's regular business dealings and contract negotiations. The fact that Key Custom lost the asset upon which it was relying to make these payments is insufficient to fairly bring Key Customs' claim within the CGL Policy's definition of "property damage."[15]

Key Custom makes two other arguments in favor of coverage. In response to Mid-Continent's motion for summary judgment, Key Custom for the first time posits that the Hunt Family's lawsuit, while "couched in terms of breach of contract," is actually a tort claim for slander of title (which would arguably be covered by the CGL Policy) because "the facts

---

[14] The deposition testimony of Key Custom's officers further supports the nature of these claims. See Deposition of Richard Parker, pp. 17-19, 21-23, 30, 55-57: Deposition of Staci Revell, pp. 26-28, 47.

[15] Further demonstrating the weakness of Key Custom's argument is the fact that it has presented no legal authority for its position, and focuses almost entirely on its Amended Complaint, in which Key Custom asserts that its claims "are for damages sustained as a result of the destruction of the subject property." Amended Complaint, ¶ 17(a). This argument is both self-serving and unpersuasive. While at the motion to dismiss stage, the Court will take all allegations in a plaintiff's complaint as true, we are now at the summary judgment stage, where the Court must take the entire record, including all affidavits, depositions, and documentary evidence into consideration. See Fed.R.Civ.P. 56. Although Key Custom alleges in its Amended Complaint that its claim arise from property damage, it is clear after reviewing the entire record, and in particular the depositions of Key Custom's officers, that Key Custom's claims arise from either statutory liens or breaches of various contracts.

giving rise to that contract were in part due to actual damages sustained by the Hunt Family II, Ltd., . . . specifically the fact that [the Hunt Family] was faced with the property damage and with the prospect of satisfying various liens filed against its property to clear Hunt's title."[16]  This argument fails for at least two reasons.  First, whatever claims or strained legal theories the Hunt Family might have pursued, the fact remains that the claims asserted against Key Custom are straightforward contract claims.  Second, if Key Custom's theory is correct, then Key Custom became obligated to pay damages "by reason of the assumption of a liability" of the Hunt Family - namely the agreement with the Hunt Family to pay the liens.  Such damages are excluded under Section I § 2.b. of the CGL Policy.     The Court also disagrees with Key Custom's focus on the provision in the CGL Policy describing the Policy as an excess insurance policy. According to Key Custom, this provision, which provides that Mid-Continent will only make payments that are in excess of any other existing insurance, including builder's risk insurance,[17] means that Mid-Continent intended to cover Key Custom's claims.  That is not what the provisions says. Rather, the provision merely requires that an insured first seek recovery from any other valid and available forms of insurance.  It does not in any way mandate the conclusion that

---

[16]See Doc. 46, pp. 2-3.

[17]See Section IV, § 4.b(a).

Mid-Continent intended to ignore Florida law and cover claims for breach of contract or for economic damages.[18]

Since the Court has concluded that Key Custom's claims constitute neither "bodily injury" or "property damage," the Court must agree with Mid-Continent that the CGL Policy does not obligate them to cover Key Custom's claims with respect to the Groveland Project. To be sure, when interpreting insurance contracts, all questions of potential ambiguity must be construed in favor of the insured and against the insurer who drafted the contract in the first place. However, "[w]here the interpretation urged is not only strained, but would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company, the insurer is entitled to that fair construction which reflects the understanding of the parties. . . ." Old Republic Ins. Co. v. West Flagler Assocs., Ltd., 419 So.2d 1174, 1177 (Fla. 3d Dist. Ct. App. 1982) (quoting Temco Metal Products Co. v. St. Paul Fire & Marine Ins. Co., 543 P.2d 1, 2 (Or. 1975) (citation omitted)). Here, the risk of covering the claims alleged by Key Custom simply was not contracted for by the parties.

II.     Do the Exclusions in the CGL Policy Prevent Coverage?

In its denial of coverage letter, Mid-Continent listed several exclusions which applied to Key Custom's claim. Key Custom does not challenge any of these exclusions. Nor does it argue that the definitions of "property damage" or "tort liability" stated in the CGL Policy

---

[18] For the reasons set forth in Mid-Continent's reply brief (Doc. 48), the Court also rejects Key Custom's effort to create liability (and in turn insurance coverage) for the fire by invoking the doctrine of *res ipsa loquitur*.

16

are vague or ambiguous. Instead, Key Custom focuses on a single provision in Section II of the CGL Policy, which defines who is an "insured." This provision provides that volunteer workers and employees are considered insured for purposes of coverage under the CGL Policy, so long as they are acting within the scope of their employment or carrying on the duties of Key Custom, except in cases where there is property damage to property in the care, custody or control of Key Custom.[19] According to Key Custom, this provision is actually an exclusion, is vague and ambiguous, and therefore must be interpreted in favor of coverage.

Because the Court has determined that Key Custom's claims are not covered by the CGL Policy, there is no need to analyze this provision. Moreover, it does not appear that this provision ever came into play during Mid-Continent's analysis of Key Custom's claims or decision to deny coverage. There is no mention of this provision in either Mid-Continent's reservation of rights letter or denial letter, and Mid-Continent has stated that it did not rely on this section in any way. From a plain reading of the CGL Policy and Key Custom's moving papers, it is also clear that this provision - which is not an exclusion but merely a definition of coverage - does not apply, as there is no evidence that any volunteer workers or employees of Key Custom have ever sought coverage under the Policy. Thus, even if the Court were to decide that this provision was ambiguous and construed it in favor of Key Custom, it is completely irrelevant.

---

[19] See Section II, § 2.a.(2).

## Conclusion

Accordingly, upon due consideration, it is ORDERED and ADJUDGED that:

(1) Key Custom Homes, Inc.'s Motions for Summary Judgment (Docs. 19, 35) are DENIED;

(2) Mid-Continent Casualty Company's Motion for Judgment on the Pleadings (Doc. 21) is DENIED AS MOOT;

(3) Mid-Continent Casualty Company's Motion for Summary Judgment (Doc. 44) is GRANTED. The Clerk is directed to enter judgment in favor of Mid-Continent Casualty Company and against Key Custom Homes, Inc., on all claims; and

(4) The Clerk is further directed to terminate all pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 24th day of August, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record